UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

ARTHUR LOPEZ, JR.,

                Petitioner,

   v.                                    9:24-CV-1057
                                       (BKS)
WARDEN, FCI Ray Brook,

                Respondent.

───────────────────────────────────

APPEARANCES:                                  OF COUNSEL:

ARTHUR LOPEZ, JR.
Petitioner, pro se
13884-045
Miami Federal Detention Center
P.O. Box 019120
Miami, Florida 33101

UNITED STATES ATTORNEY
RANSOM P. REYNOLDS, III, ESQ.
Assistant United States Attorney
100 South Clinton Street
Syracuse, New York 13261

BRENDA K. SANNES
Chief United States District Judge

**DECISION and ORDER**

**I.      INTRODUCTION**

Petitioner seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2241.  Dkt. No.

1, Petition ("Pet.").  Respondent filed an opposition.  Dkt. No. 6, Response; Dkt. Nos. 6-1-6-9,

Exhibits.  Petitioner replied.  Dkt. No. 12, Reply.  For the reasons which follow, the petition is

denied and dismissed in its entirety.

## II.    BACKGROUND

In 2012, petitioner was convicted of Conspiracy to Distribute Cocaine and sentenced, by the Eastern District of Wisconsin, to 40 years of imprisonment and 5 years of supervised release.  Dkt. No. 1, Magnusson Declaration ("Magnusson Decl."), ¶ 4; Dkt. No. 6-2 at 3-4.

Petitioner challenges his conditions of confinement, namely the FCI Ray Brook Warden's decision to deny his uncle's request to be placed on petitioner's approved visitors list.  Pet. at 1, 3-6.  More specifically, petitioner's two uncles ("Julian" and "Eddie") and his father ("Arthur Sr.") have all been incarcerated.  *Id.* at 2-3.  Eddie and Arthur Sr. were co-defendants in the crime for which petitioner was presently convicted.  *Id.* at 3.  While Arthur Sr. is serving a life sentence, Eddie has since been released.  *Id.*  Eddie has been approved as a visitor for Arthur Sr. and Julian; however, Eddie's request to visit the petitioner was denied.  *Id.* 3-6, 9, 11.  Petitioner argues that his First Amendment and Due Process rights have been violated due to the arbitrary and capricious decision to deny Eddie's visitation request and prevent petitioner from maintaining his familial relationships.  *Id.* at 5-6.

While at Ray Brook, petitioner filed or attempted to filed twelve administrative remedy submissions regarding the Warden's denial of his visitation.  Magnusson Decl. ¶ 8; Dkt. No. 6-7.  The respondent agrees that petitioner fully satisfied the exhaustion requirements. Magnusson Decl. ¶ 8.

In the denial petitioner received from the Warden, on April 7, 2023, the Warden explained that

> In accordance with Program Statement 5267.09, Visiting
> Regulations, and corresponding Institutional Supplement
> RBK5267.09D, the Warden may restrict inmate visiting when
> necessary to ensure the security and good order of the institution.
> To ensure the security and orderly running of the institution, staff
> may request all proposed visitors complete the visiting

2

> questionnaire, and an investigation will be conducted before placing them on the inmate's approved visiting list.
>
> In response[,] during the investigation into the appropriateness of your uncle, Eddie Lopez Sr. being placed on your visiting list, issues were identified that could potentially affect the safety of the institution if he were to be added to your approved visiting list.

Dkt. No. 6-8 at 3.  Petitioner unsuccessfully appealed the Warden's decision.  Dkt. No. 6-8 at 4 (appeal); Dkt. No. 6-8 at 5 (regional director's decision denying appeal).

In the Regional Director's response, dated June 16, 2023, she explained that

> [The] *Visiting Regulations*[] affords the Warden broad discretion in determining who may be permitted to visit in the institution. Regarding individuals with prior criminal convictions, the existence of a criminal conviction alone does not preclude visits. Specific approval of the Warden may be required before such visits take place.  In addition, the Warden may restrict inmate visiting when necessary, to ensure the security and good order of the institution.  Due to practical considerations and the different nature of various institutions, certain limitations and controls must be established in developing and administering visiting regulations.  Social visitation is a privilege and each case is reviewed on a case-by-case basis to determine the appropriateness of entry into the institution.

Dkt. No. 6-8 at 5.  Further, the Regional Director concluded that "the Warden adequately addressed [petitioner's] complaint," and that "[d]ue to privacy concerns, specific information regarding this decision will not be disclosed to [petitioner]."  *Id.*  Petitioner also unsuccessfully appealed the Regional Director's denial.  Dkt. No. 6-8 at 6 (appeal); Dkt. No. 6-8 at 7 (decision denying appeal from the Central Office).

In denying petitioner's appeal, in October of 2023, the Acting Administrator of the National Inmate Appeals concluded that "[t]he approval of visiting privileges falls within the discretionary authority of the Warden [and t]he Warden adequately addressed [petitioner's] complaint and explained why [his] visitor [wa]s denied being added to [his] visiting list." Dkt.

No. 6-8 at 7.  During petitioner's program review the following year, it was noted that

petitioner "[m]aintains family contact through phone and email."  Dkt. No. 6-4 at 4.  Further,

petitioner was working to maintain his positive contact between October of 2024 and April of

2025 by communicating "with family and friends [by] placing at least two phone calls and

send[ing]/receiv[ing] five emails weekly."  Dkt. No. 6-4 at 5.

Additionally in October of 2024, petitioner's classification points were reduced and his

security designation was lowered from "medium" to "low-in".  Magnusson Decl. ¶ 5; Dkt. No.

6-5 at 2.  As a result of the lower security designation, petitioner was transferred from Ray

Brook to Miami.  Magnusson Decl. ¶ 5; Dkt. No. 6-3 at 2; Dkt. No. 6-5 at 2; Dkt. No. 6-6 at 2.

## III.    DISCUSSION

### A.    Jurisdiction

Respondent first argues that the Petition must be dismissed because petitioner's

transfer, from Ray Brook to Miami, rendered his present claim moot.  Dkt. No. 6 at 4.  The

petitioner disagrees.  Dkt. No. 12 at 1-6.  Specifically, petitioner asserts that "the Warden's

denial of visitation is documented in [petitioner's] BOP record and may affect future

determination at FDC Miami or any other facility."  Dkt. No. 12 at 5.

"The question [of] whether [a court] has jurisdiction over [a] habeas petition breaks

down into two related subquestions. First, who is the proper respondent to that petition? And

second, does [the court] have jurisdiction over him or her?"  *Rumsfeld v. Padilla*, 542 U.S.

426, 434 (2004).

A writ of habeas corpus must "be directed to the person having custody of the person

detained."  28 U.S.C. § 2243.  The default rule is that the proper respondent is "the warden of

the facility where the prisoner is being held."  *Padilla*, 542 at 435.  Here, when petitioner filed

the instant action, he was incarcerated at Ray Brook, which is Essex County, in the Northern

District of New York ("Northern District"); therefore, the Northern District was the district of

confinement.  Petitioner correctly named the warden of Ray Brook as a respondent.

Therefore, this Court initially obtained proper jurisdiction over petitioner's case.  *Padillia*, 542

US at 434-35.

The question now, as respondent has articulated, is whether this Court continues to

have jurisdiction to decide petitioner's action since he has been transferred to a facility

located outside of the Northern District.  This is a complicated inquiry because "[d]istrict

courts within the Second Circuit have differed with respect to whether and in what way a

petitioner's post-petition transfer affects a court's authority over such a petition."  *See Dailey*

*v. Pullen*, No. 3:22-CV-1121, 2023 WL 3456696, at *3 (D. Conn. May 15, 2023).

To support his position, respondent relies on a Second Circuit decision where the

inmate's transfer mooted the possibility for injunctive relief regarding the alleged violation of

his conditions of confinement, specifically his placement in solitary housing for refusing to

cease praying while he was working during Ramadan.  *Sweeper v. Taylor*, 383 F. App'x 81,

82 (2d Cir. 2010).  Consistent with the rationale in *Sweeper,* "[s]ome district courts within the

Second Circuit have treated a petitioner's post-petition transfer as mooting a section 2241

petition[.]"  *Dailey*, 2023 WL 3456696, at *3  (citing cases).

However, relying on an exception created by the Supreme Court in *Ex parte Endo*,

"several district courts in the Second Circuit have concluded that once a petition is filed, the

government's decision to transfer a detainee has no effect on jurisdiction, which is retained by

the district court that had jurisdiction over the proper respondent at the time of filing."  *Dailey*,

2023 WL 3456696, at *3 (internal alternations and case citations omitted).  This Court has

5

been one of them, recently concluding that a district court maintains jurisdiction of a habeas action, even when a petitioner is transferred to a completely different district, so long as jurisdiction was initially correct when the case was commenced.  *See Mason v. Alatary*, No. 9:23-CV-0193 (GLS), 2023 WL 2965619, at *3 (N.D.N.Y. Apr. 17, 2023) (citing cases throughout the Second Circuit which retained jurisdiction of properly commenced cases regardless of where petitioner was subsequently transferred).

To further confuse matters, the Supreme Court just reaffirmed the district of confinement rule for section 2241 petitions.  *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025) ("For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.").  Ultimately, while acknowledging the complexity of the issue and the parties' various arguments, the undersigned has decided to join others who have opted "not . . . to wade through this thicket of unsettled law," given that petitioner's claim is meritless.  *Dailey*, 2023 WL 3456696, at *4.

### B.    Merits

"A right to intimate association with family members [beyond just that of a parent-child relationship] has been held to derive from both the First Amendment right of association and the substantive protections of the Fourteenth Amendment's Due Process Clause."  *Azzara v. Scism*, No. 4:11-CV-1075, 2012 WL 722342, at *5 (M.D. Pa. Mar. 1, 2010) (citing cases).  However, "freedom of association is among the rights least compatible with incarceration."  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  Thus, "security considerations are sufficiently paramount in the administration of the prison to justify the imposition of some restrictions on the entry of outsiders into the prison for face-to-face contact with inmates."  *Pell v. Procunier*, 417 U.S. 817, 827 (1974).  Consequently, "a prison inmate retains those First Amendment

6

rights that are not inconsistent with his status as a prisoner or with the legitimate penological

objectives of the corrections system." *Id.* at 823; *see also Overton*, 539 U.S. at 131 ("Many of

the liberties and privileges enjoyed by other citizens must be surrendered by [a] prisoner

[because the very object of imprisonment is confinement.]  An inmate does not retain rights

inconsistent with proper incarceration.").

In determining whether a decision restricting visitation withstands a petitioner's

constitutional challenge, a court utilizes the four-factor test outlined by the Supreme Court in

*Turner v. Safley*, 482 U.S. 78, 89 (1987).  *See e.g.*, *Overton*, 539 U.S. at 132.  Specifically,

> [(1)] whether the regulation has a "'valid, rational connection'" to a legitimate governmental interest;
>
> [(2)] whether alternative means are open to inmates to exercise the asserted right;
>
> [(3)] what impact an accommodation of the right would have on guards and inmates and prison resources; and
>
> [(4)] whether there are "ready alternatives" to the regulation.

*Id.*  "The burden . . . is not on the [government] to prove the validity of prison regulations but

[instead] on the prisoner to disprove it."  *Id.* (citing cases).

Here, petitioner argues that the Warden's decision to deny his uncle's visitation

request was arbitrary and capricious, therefore, it violated his First Amendment and Due

Process rights.  Pet. at 5-6.  Respondent contends that "the Warden considered and used

sound correctional judgment in denying visitation . . . and that decision was not an abuse of

discretion."  Dkt. No. 6 at 5.  Petitioner replied that the BOP's "authority is not absolute" and

any "denial must be supported by a clear and articulable security rationale rather than

generalized assertions of risk."  Dkt. No. 12 at 7.  Petitioner contends that his "visitation

denial [was not] justified by specific security concerns [and instead relied on] . . . vague

assertions of discretion."  *Id.* at 8.  In sum, "[t]he United States . . . failed to demonstrate that the Warden's decision was grounded in legitimate penological concerns[.]"  *Id.*

Based upon the state court record, the Court finds that the petitioner has not met his burden that the restriction on his uncle's visitation was unreasonable or unrelated to legitimate penological interests.  Petitioner has failed to specifically articulate why he feels the violation was arbitrary and capricious, other than to conclude that the decisions that he received, denying his administrative grievances, provided nothing more than vague and conclusory reasons for the denial.  The undersigned disagrees.

The BOP's decisions explaining the denial do show a valid, rational connection to the prison safety.  First, the Warden explained that, pursuant to an "investigation into the appropriateness of [petitioner's] uncle . . . being placed on [petitioner's] visiting list, issues were identified that could potentially affect the safety of the institution if he were to be added to [petitioner's] approved list."  Dkt. No. 6-8 at 3.  The Regional Director further explained that "[d]ue to privacy concerns, specific information regarding this decision will not be disclosed to [petitioner]."  Dkt. No. 6-8 at 5.  The Regional Director also clarified that "the existence of a criminal conviction alone does not preclude visits," Dkt. No. 6-8 at 5; however, the undersigned is mindful that the Supreme Court has found that "regulation[s] prohibiting visitation by former inmates bears a self-evident connection to the [government's] interest in maintaining prison security and preventing future crimes . . . [and] communication with other felons is a potential spur to criminal behavior," *Overton*, 539 U.S. at 133-34.  Petitioner does not allege, nor does the record support, that the Warden failed to abide by Ray Brook's *Visiting Regulations* procedures.  More specifically, petitioner fails to prove, let alone attempt to argue, that an investigation was never conducted after his uncle requested to be an

8

approved visitor or that information was not discovered that supported the Warden's conclusion that permitting visitation would jeopardize the internal safety and security of the facility.

Second, there are alternative means of communication available to, and being utilized by, the petitioner. Petitioner's program review from Ray Brook indicated that he "[m]aintain[ed] family contact through phone and email," and included the goal to continue with his positive contact by "placing at least two phone calls and send[ing]/receiv[ing] five emails weekly." Dkt. No. 6-4 at 4-5. Accordingly, it appears that petitioner can still associate with his uncle, he just needs to do it through phone calls and email. The availability of these additional means of communication has been cited by other district courts when upholding a facility's restrictions on an inmate's visitations. *See Azzara*, 2012 WL 722342, at *6 (concluding that a disciplinary sanction of restricted visitation did not violate an inmate's First Amendment rights where *inter alia* the inmate could communicate to family through alternative means like written correspondence); *LeCompte v. Ricci*, No. 3:11-CV-1639, 2011 WL 6130596, at *11 (N.D.J. Dec. 7, 2011) (finding the second *Turner* factor supported a visitation restriction where the inmate had "alternative means of maintaining ties with his mother through written correspondence and telephone calls."). Moreover, it does not appear that petitioner has any "visitation restrictions with his other . . . family members and friends," so he is still able to have face-to-face associations with other people, just not his uncle. *LeCompte*, 2011 WL 6130596, at *11.

Finally, it does not appear that there is a ready alternative to the visitation restriction to address Ray Brook's security concerns. The restriction has a minimal impact on Ray Brook's staff and allocation of prison resources without unduly harming petitioner's ties with his uncle.

Therefore, the undersigned finds no constitutional violation with respect to petitioner's claim that his uncle's visitation restriction violated his First and Fourteenth Amendment rights.

IV.    **CONCLUSION**

**WHEREFORE**, it is

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that because the petition was brought under 28 U.S.C. § 2241, a certificate of appealability is not required for petitioner to appeal the denial of his petition.  *See Murphy v. United States*, 199 F.3d 599, 601 n.2 (2d Cir. 1999) (holding that the Antiterrorism and Effective Death Penalty Act's certificate of appealability requirement does not apply to § 2241 petitions).  However, to the extent one is required, the Court recommends that no certificate of appealability be issued because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right.  *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

Dated: September 10, 2025

Brenda K. Sannes
Chief U.S. District Judge